**UNITED STATES of America, Appellee,**

v.

**Tanell Rashaad CURRY, t/n Tanell R. Curry, Appellant.**

**No. 89–5422MN.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 16, 1990.

Decided Aug. 7, 1990.

---

Earl R. Gray, St. Paul, Minn., for appellant.

Richard E. Vosepka, Minneapolis, Minn., for appellee.

Before WOLLMAN and MAGILL, Circuit Judges, and WATERS,* District Judge.

MAGILL, Circuit Judge.

Tanell Curry appeals from the district court's [1] judgment convicting him of possession of cocaine with the intent to distrib-ute, 21 U.S.C. § 841(a)(1), and use of a firearm during and in relation to a drug trafficking crime, 18 U.S.C. § 924(c)(1). For reversal, Curry argues that (1) evidence seized pursuant to two search warrants should have been suppressed because of defects in the warrants, and (2) the evidence was insufficient to establish his use of a firearm under § 924(c)(1). We affirm.

## I.

On October 6, 1988, Bloomington, Minnesota police searched Curry's residence for evidence of certain robberies pursuant to a search warrant issued by a state judge. During this search, officers observed drug paraphernalia and a small amount of what appeared to be cocaine. The residence was then secured while a second search warrant based upon these observations was obtained. Execution of this warrant uncovered 527 grams of cocaine and two firearms, among other items.

Curry moved for suppression of the evidence seized pursuant to the two search warrants and for an evidentiary hearing under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). The magistrate [2] recommended denial of the suppression motion and denied the motion for a *Franks* hearing. After reviewing the record and the magistrate's findings, the district court entered an order denying both motions. The case was then tried to the district court on stipulated facts, which the court adopted as the factual basis for its order for judgment of conviction.

## II.

### A. Probable Cause

■ Curry argues that the district court erred in rejecting his claim that the first search warrant was not supported by probable cause. The principles governing our

---

* THE HONORABLE H. FRANKLIN WATERS, Chief Judge, United States District Court for the Western District of Arkansas, sitting by designation.

1. The Honorable Diana E. Murphy, United States District Judge for the District of Minnesota.

2. The Honorable Bernard P. Becker, United States Magistrate for the District of Minnesota.

review of this issue are well established. Probable cause exists if, based upon a common-sense consideration of all the circumstances set forth in the supporting affidavit, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). The issuing official's finding of probable cause is entitled to great deference. *United States v. Bourbon*, 819 F.2d 856, 859 (8th Cir.1987). A reviewing court's function is simply to ensure that the issuing official "had a 'substantial basis for ... conclud[ing]' that probable cause existed." *Gates*, 462 U.S. at 238–39, 103 S.Ct. at 2332–33 (quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)). We must affirm a district court's determination made in the context of a motion to suppress unless it is clearly erroneous. *United States v. Martin*, 866 F.2d 972, 976 (8th Cir.1989); *United States v. Lewis*, 738 F.2d 916, 920 (8th Cir.1984), *cert. denied*, 470 U.S. 1006, 105 S.Ct. 1362, 84 L.Ed.2d 383 (1985). Applying these principles to the case at hand, we conclude that the district court did not clearly err in determining that the state judge had probable cause for issuing the first search warrant.[3]

The affidavit supporting this warrant was prepared by Detective Swanson of the Bloomington Police Department, and included the following information. Since September 16, 1988, Detective Swanson and other Bloomington officers had been investigating a series of robberies in which women approached men wearing Rolex watches in local bars, put a sleep-inducing drug in their drinks, took them to hotel rooms, and then stole their watches and other valuables. The watches and other stolen items were immediately taken from the women and delivered to an unknown location. Information from one of the female suspects and a Houston, Texas detective indicated that the stolen property was fenced locally or sent to Houston. The cooperative female suspect also stated she had overheard conversations that indicated the prescription drugs used in the robberies were obtained locally by illegal means. During the investigation, several of the female suspects were arrested in three area hotels. The affidavit stated that computer printouts from all three hotels showed telephone calls were made from the suspects' rooms to a Bloomington phone number listed to a Cheryl Curry of 1209 Devonshire Curve. On October 6, 1988, the Bloomington police department received telephone calls from a man inquiring about two of the arrested suspects. A trace was then placed on the department's phone number, and shortly thereafter the man called again making the same inquiries. This call was traced to the Curry residence at 1209 Devonshire Curve. Finally, the affidavit stated that a check with the Hennepin County Jail disclosed that Cheryl Curry had a criminal history and that her real name was Cheryl Ann Frederick.

The circumstances set forth in the affidavit established a link between 1209 Devonshire Curve, the arrested suspects, and the hotel rooms where they had stayed. In light of the information indicating that the stolen property was immediately taken from the female perpetrators and kept at a location other than their hotel rooms, that some of the stolen property was fenced locally, and that the drugs were obtained locally, there were sufficient grounds for believing that a person or persons at 1209 Devonshire Curve were involved in the robbery ring. In sum, we cannot say that the totality of the information in the affidavit failed to provide the issuing judge with a substantial basis for concluding there was a fair probability that evidence of the robberies would be found at the residence.

**B.** *Franks* **Hearing**

■ Curry argues that the magistrate and district court erred in denying his mo-

---

**3.** Curry also contends that the affidavit supporting the second search warrant failed to state probable cause. This contention is devoid of merit. The affiant identified himself as an experienced police officer and stated that during the execution of the first warrant, he observed suspected cocaine and drug paraphernalia, including a scale capable of handling large quantities of controlled substances.

tion for a *Franks* hearing. At the suppression hearing, Curry alleged that the supporting affidavit for the first search warrant falsely stated that (1) there were computer printouts from all three hotels showing phone calls from the arrested suspects' rooms to 1209 Devonshire Curve, and (2) the woman residing at that address, Cheryl Curry, had a criminal history. To receive a *Franks* hearing, a defendant must satisfy two requirements. First, the defendant must make a substantial preliminary showing of an intentional or reckless falsehood in the affidavit. *Franks*, 438 U.S. at 155–56, 171, 98 S.Ct. at 2676–77, 2684. "The substantiality requirement is not lightly met." *United States v. Wajda*, 810 F.2d 754, 759 (8th Cir.), *cert. denied*, 481 U.S. 1040, 107 S.Ct. 1981, 95 L.Ed.2d 821 (1987). "Allegations of negligence or innocent mistake are insufficient." *Franks*, 438 U.S. at 171, 98 S.Ct. at 2684. Second, the allegedly false statements must be necessary to the finding of probable cause. *Id.* at 156, 171–72, 98 S.Ct. at 2676, 2684–85. We need not address this second issue because, with respect to both alleged falsehoods, Curry's offers of proof were insufficient to meet the first *Franks* requirement.

■ The government concedes that the affidavit was false insofar as it stated there were computer printouts from all three hotels. The investigating officers had printouts from one of the hotels; from another they had a handwritten record of local phone calls; and in a suspect's room at the third hotel they had found handwritten notes containing the phone number for 1209 Devonshire Curve. At the suppression hearing, Detective Swanson admitted that his choice of words in the challenged portion of the affidavit was poor, but testified that he tried to make the affidavit accurate to the best of his ability and was not attempting to mislead the judge who issued the warrant. The magistrate found, and the district court agreed, that Curry failed to make a substantial showing that the falsehood was made deliberately or recklessly. This finding is not clearly erroneous. Absent other evidence demonstrating more than negligence, the falsehood itself was not so flagrant as to warrant an inference that Detective Swanson acted with reckless disregard for the truth.

At the suppression hearing, defense counsel stated that the woman who resided at 1209 Devonshire Curve was Cheryl Nelson of Houston, and that she had no criminal record. The only evidence submitted in support of this allegation was the lease agreement for 1209 Devonshire Curve. The agreement contained three versions of the resident woman's name—Cheryl Curry, Cheryl Nelson, and Cheryl G. Nelson—and listed a different birth date for Cheryl Nelson than that given for Cheryl Curry in the affidavit. The magistrate and district court did not clearly err in finding this evidence did not constitute a substantial showing that the Cheryl Curry investigated by Detective Swanson and the Cheryl Nelson listed on the lease were not the same person, or that Cheryl Nelson did not have a criminal record. Even if the information concerning Cheryl Curry in the affidavit was false, Curry submitted no proof that this falsehood was intentional or reckless. Detective Swanson testified that the phone number for 1209 Devonshire Curve on the printouts and the handwritten record and notes was listed to a Cheryl Curry, and that the lease was not obtained until after the search had begun.

### C. Particularity

■ "A search warrant must contain a description of the place to be searched" in order to comply with the fourth amendment's particularity requirement. *United States v. Alberts*, 721 F.2d 636, 639 (8th Cir.1983). In the present case, the first search warrant did not identify the premises to be searched because the space for filling in that information was left blank. The government argues that this deficiency was cured by the supporting affidavit, which accurately stated the address of the residence to be searched.

" 'The traditional rule is that the generality of a warrant cannot be cured by the specificity of the affidavit which supports it because, due to the fundamental distinction between the two, the affidavit is neither part of the warrant nor available for defin-

ing the scope of the warrant.'" *United States v. Gill*, 623 F.2d 540, 543 (8th Cir.) (quoting *United States v. Johnson*, 541 F.2d 1311, 1315 (8th Cir.1976) (per curiam)), *cert. denied*, 449 U.S. 873, 101 S.Ct. 214, 66 L.Ed.2d 94 (1980). However, a description in the supporting affidavit can supply the requisite particularity if "'a) the affidavit accompanies the warrant, and b) the warrant uses suitable words of reference which incorporate the affidavit therein.'" *United States v. Strand*, 761 F.2d 449, 453 (8th Cir.1985) (quoting *Johnson*, 541 F.2d at 1315); *Gill*, 623 F.2d at 543 (same). Other circuits apply the same two-part standard. *See United States v. Leary*, 846 F.2d 592, 603 & n. 20 (10th Cir.1988); *United States v. Hayes*, 794 F.2d 1348, 1354–55 (9th Cir.1986), *cert. denied*, 479 U.S. 1086, 107 S.Ct. 1289, 94 L.Ed.2d 146 (1987); *United States v. Roche*, 614 F.2d 6, 8 (1st Cir.1980); *United States v. Womack*, 509 F.2d 368, 382 (D.C.Cir.1972), *cert. denied*, 422 U.S. 1022, 95 S.Ct. 2644, 45 L.Ed.2d 681 (1975). The government concedes that both criteria must be met.[4]

The search warrant did not contain suitable words of reference incorporating the affidavit, such as "see attached affidavit," *Massachusetts v. Sheppard*, 468 U.S. 981, 990 n. 7, 104 S.Ct. 3424, 3429 n. 7, 82 L.Ed.2d 737 (1984); *Huffman v. United States*, 470 F.2d 386, 390 n. 3, 393 n. 7 (D.C.Cir.1971), *rev'd on rehearing on other grounds*, 502 F.2d 419 (D.C.Cir.1974), or "as described in the affidavit," *Johnson*, 541 F.2d at 1313, 1315; *In re Property Belonging to Talk of the Town Bookstore, Inc.*, 644 F.2d 1317, 1319 (9th Cir.1981). We reject the government's assertion that the warrant incorporated the affidavit's description of the place to be searched by its use of the following language: "Whereas, the application and supporting affidavit of

Det. Ross Swanson (was) (were) duly presented and read by the Court, and being fully advised in the premises...." For purposes of incorporation, this language is even less adequate than that which we found insufficient to meet the incorporation requirement in *Strand*, 761 F.2d at 453. Accordingly, the first search warrant was invalid because it did not satisfy the fourth amendment's particularity requirement. It follows that the second search warrant was also invalid because probable cause for it was based upon information obtained during the execution of the first warrant.

**D. *Leon* Exception to Exclusionary Rule**

■ In *United States v. Leon*, 468 U.S. 897, 922, 104 S.Ct. 3405, 3420, 82 L.Ed.2d 677 (1984), the Supreme Court held that the exclusionary rule does not apply when an officer acted "in objectively reasonable reliance on a subsequently invalidated search warrant." The Court directed that "suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." *Id.* at 918, 104 S.Ct. at 3418. In setting forth situations in which suppression would remain appropriate, the Court stated that "*depending on the circumstances of the particular case*, a warrant may be so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Id.* at 923, 104 S.Ct. at 3421 (emphasis added). As this language makes plain, the *Leon* exception is not automatically inapplicable in every case where a warrant is found invalid on the ground that it is insufficiently particular. *See Sheppard*, 468 U.S. at 988–91, 104 S.Ct. at 3427–29; *United States v. Stelten*, 867 F.2d 446, 451 (8th

---

**4.** Some circuits have applied these criteria in a less exacting fashion, concluding that an affidavit can be used to cure a warrant's lack of particularity even if both criteria have not been completely satisfied. *See United States v. Gahagan*, 865 F.2d 1490, 1497 (6th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 3242, 106 L.Ed.2d 590 (1989); *United States v. Washington*, 852 F.2d 803, 805 (4th Cir.1988); *United States v. Wuagneux*, 683 F.2d 1343, 1351 n. 6 (11th Cir.1982),

*cert. denied*, 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983). We note that our citations to *Wuagneux* in *Rickert v. Sweeney*, 813 F.2d 907, 909 (8th Cir.1987), should not be construed as having modified this circuit's well-established rule that the affidavit must both accompany the warrant and be incorporated into it. *See Strand*, 761 F.2d at 453. It is clear that neither of these requirements was satisfied in *Rickert*, 813 F.2d at 908–09.

Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 95, 107 L.Ed.2d 59 (1989); *United States v. Bonner,* 808 F.2d 864, 867 (1st Cir.1986), *cert. denied,* 481 U.S. 1006, 107 S.Ct. 1632, 95 L.Ed.2d 205 (1987).

The instant case is similar to *Sheppard,* 468 U.S. at 988–91, 104 S.Ct. at 3427–29, where the Supreme Court applied the *Leon* exception to the fruits of a search conducted pursuant to a warrant that inaccurately described the things to be seized, due to the issuing official's failure to make a clerical correction, and did not incorporate the supporting affidavit's accurate description. Here, the application for the first search warrant and the supporting affidavit both stated that the address of the residence to be searched was 1209 Devonshire Curve. As the magistrate found, the application and the affidavit were in actuality a single three-page document, entitled "Application for Search Warrant and Supporting Affidavit." The magistrate further found that this document was attached to the warrant, which was labeled as page four. The issuing judge signed both the warrant and the application/affidavit form. The search was directed by Detective Swanson, the officer who prepared the application and the affidavit. This fact is significant because in assessing whether reliance on a search warrant was objectively reasonable under the totality of the circumstances, it is appropriate to take into account the knowledge that an officer in the searching officer's position would have possessed. *See Sheppard,* 468 U.S. at 989 n. 6, 104 S.Ct. at 3428 n. 6; *United States v. Martin,* 833 F.2d 752, 756 (8th Cir.1987), *cert. denied,* —— U.S. ——, 110 S.Ct. 1793, 108 L.Ed.2d 794 (1990); *id.* at 757 (Lay, C.J., concurring). The magistrate determined there was no evidence that Detective Swanson acted other than in good faith in applying for the search warrant, and found that the failure to completely fill out the warrant form was more a clerical error than an indication of bad faith. "The responsibility for the inadvertent omission of the address on the warrant itself, must be borne by the [issuing official], as the final reviewing authority." *Bonner,* 808 F.2d at 867. Because "the exclusionary rule does not serve to deter the errors of judges, but rather the

errors of police officers," *id.* (citing *Leon,* 468 U.S. at 916, 104 S.Ct. at 3417), suppression in this case would not further the purposes of the rule. For these reasons, we agree with the district court's determination that the *Leon* exception applies to the first warrant search.

■ It follows from this conclusion that an objectively reasonable officer could have believed the information contained in the affidavit supporting the second search warrant had been lawfully obtained. Therefore, the fruits of the second warrant search were also admissible under *Leon.* *See United States v. White,* 890 F.2d 1413, 1414, 1419 (8th Cir.1989) (although information necessary to probable cause for search warrant was obtained during an illegal investigatory stop, fruits of warrant search were admissible under *Leon* because it was objectively reasonable for officers to believe stop was valid), *petition for cert. filed,* No. 89–6677 (U.S. Feb. 13, 1990).

### III.

Section 924(c)(1) provides in pertinent part: "Whoever, during and in relation to any crime of violence or drug trafficking crime ... uses or carries a firearm, shall, in addition to the punishment provided for such ... drug trafficking crime, be sentenced to imprisonment for five years." Curry contends the evidence was insufficient to support the district court's finding that he "used" a firearm within the meaning of § 924(c)(1). This finding, which is determinative of the ultimate question of guilt, must stand if " 'there is substantial evidence, taking the view most favorable to the government, to support' " it. *United States v. O'Malley,* 854 F.2d 1085, 1087 (8th Cir.1988) (quoting *Clinkscale v. United States,* 729 F.2d 940, 942 (8th Cir.1984)).

The evidence in this case was set forth in a written stipulation of facts presented to the district court. Curry was living in the residence at 1209 Devonshire Curve at the time it was searched. He was not present when the search began, but was arrested during the search as he approached the residence. The residence is a two-bedroom townhouse with a tuck-under garage. It had no bars on the windows, barricades, or other extraordinary security system.

Among other things, the search of the townhouse uncovered substantial quantities of cocaine, drug distribution paraphernalia, large sums of cash, ammunition, and two handguns. In the entryway closet on the first floor, the officers found a carry-on bag and a garment bag with luggage tags bearing the name Tanell Curry. Inside the carry-on bag was a briefcase containing 388 grams of 97% pure cocaine. Inside the garment bag was a zippered bag containing 125 grams of 97% pure cocaine. On the second floor of the townhouse, an operable, fully loaded .357 caliber revolver was discovered on the floor of the master bedroom closet. An operable unloaded .38 caliber revolver was found in the same closet. Under the mattress of the bed was $15,950 in cash. An additional $3,000 in cash was in the drawer of the nightstand in the bedroom. A briefcase containing a desk reference book on the identification of pharmaceutical drugs was located on the bedroom floor. In the kitchen, the officers discovered an O–Haus electric scale, a sifter and tray, a 300–count box of plastic baggies, and a plate containing traces of cocaine. In the garage, they found a zippered bag containing both an O–Haus triple beam scale and a box with forty-seven loaded 9 mm. cartridges. Fourteen grams of 87% pure cocaine were found in Curry's car in the garage. After his arrest, Curry told the officers that the handguns and money belonged to him.[5]

■ More than mere possession of a firearm is required for a conviction under § 924(c)(1). *United States v. Lyman,* 892 F.2d 751, 753 (8th Cir.1989), *petition for cert. filed,* 58 U.S.L.W. 3695 (U.S. Apr. 19, 1990) (No. 89–1634). However, the government need not show that the defendant was in actual physical possession of the firearm, or that he brandished or dis-

charged it. *United States v. Matra,* 841 F.2d 837, 843 (8th Cir.1988). In *United States v. LaGuardia,* 774 F.2d 317, 321 (8th Cir.1985), where the predicate offense was also possession of cocaine with the intent to distribute, this court held that "[t]he presence and availability in light of the evident need demonstrates [sic] the use of the firearm to commit the felony."[6] We have utilized the *LaGuardia* standard in other § 924(c)(1) cases where the predicate violation was a drug trafficking offense. *See Matra,* 841 F.2d at 842; *United States v. Brett,* 872 F.2d 1365, 1370 (8th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 322, 107 L.Ed.2d 312 (1989); *United States v. Young–Bey,* 893 F.2d 178, 181 (8th Cir. 1990); *United States v. Foote,* 898 F.2d 659, 664 (8th Cir.), *petitions for cert. filed,* Nos. 89–7781/7756 (U.S. June 12 & 13, 1990); *see also United States v. Drew,* 894 F.2d 965, 968 (8th Cir.) (where predicate offense is drug distribution, "mere presence and ready availability of a firearm at a house where drugs are dealt" sufficient to establish "use" of a gun under § 924(c)(1)), *cert. denied,* —— U.S. ——, 110 S.Ct. 1830, 108 L.Ed.2d 959 (1990).

■ Curry's principal argument is that *Lyman* precludes his conviction under § 924(c)(1) because there was no evidence that any drug transactions took place in the residence where the guns were found. In *LaGuardia,* 774 F.2d at 321, we rejected the argument that such evidence is necessary. Nevertheless, Curry suggests that *Lyman* established a heightened standard for "use" under § 924(c)(1) by adopting the standard set forth in *United States v. Feliz–Cordero,* 859 F.2d 250, 254 (2d Cir.1988), which requires either (1) evidence that the defendant intended to have the firearm "available for possible use during [a particular drug] transaction," or (2) evidence that

---

**5.** The parties stipulated that an experienced Drug Enforcement Administration officer would have testified that "handguns are a 'tool of the trade' for drug dealers and are used to protect their drugs, to protect the proceeds of drug sales, or to assist in collecting debts owed in drug dealing." According to the stipulation, the officer also would have testified that "[t]he finding of 47 loaded cartridges in the same bag with an OHaus scale is consistent with a drug

dealer maintaining two 'tools' of his trade together."

**6.** The defendant in *LaGuardia* was convicted under an earlier version of § 924(c)(1) that prohibited the use of a firearm "to commit any felony." Because the "use" element has remained the same under the current version of § 924(c)(1), "the *LaGuardia* case retains its precedential value." *Matra,* 841 F.2d at 842 n. 8.

the firearm "was strategically located so as to be quickly and easily available for use during such a transaction." Curry reads too much into the fact that we cited the *Feliz–Cordero* standard with approval in *Lyman*, 892 F.2d at 753. Our decision there did not hold that a conviction under § 924(c)(1) cannot be sustained unless that standard is satisfied. Indeed, we specifically declined "to accept or reject the Second Circuit's ruling" in *Feliz–Cordero*. *Id.* at 754. Furthermore, we restated the holding in *LaGuardia* without suggesting that it should be abandoned. *Id.* at 753. And, as noted above, this court has utilized the *LaGuardia* standard in cases decided after *Lyman*. We therefore adhere to *LaGuardia*, including its rejection of the argument made by Curry.

The facts here present a much closer question than those in any of our previous cases affirming convictions under § 924(c)(1). Nevertheless, viewing the facts in the light most favorable to the government, we conclude there was substantial evidence to support a finding that Curry's loaded .357 caliber revolver was present and readily available to secure the possession of his cocaine and cash stored in the townhouse. Curry contends that the evidence did not permit such a finding because handguns have many legitimate uses, the townhouse was not an armed "fortress," and the firearms were found in a different room than the cocaine. We do not accept this contention. "It has become common knowledge that drug traffickers typically keep firearms available to protect themselves and their drugs and drug money." *Young–Bey*, 893 F.2d at 181. Curry's drug supply consisted not of small amounts of controlled substances, but large quantities of high purity cocaine that were clearly intended for distribution. Moreover, despite Curry's assertion to the contrary, we believe it was permissible to infer that the large sums of unexplained cash found in the same bedroom as the guns came, at least in part, from drug sales, given the drug distribution paraphernalia and large quantities of cocaine also found in the townhouse. *See LaGuardia*, 774 F.2d at 320 ("large sum of unexplained cash in connection with other evidence of drug trading is probative of the previous occurrence of drug transactions"). Under the totality of the circumstances, the evidence here was sufficient to permit a finding that Curry's possession of the loaded handgun "had undoubted utility in the protection of the valuable [cocaine] supply and the cash on hand," and thereby "facilitate[d]" his commission of the drug trafficking offense. *Id.* at 321.

IV.

For the foregoing reasons, the district court's judgment is affirmed.