971 F.2d 701
 UNITED STATES of America, Plaintiff-Appellee,
v.
Billy Glenn ELLIS, James Kenneth Ellis, Dowling Z. Jackson,
a/k/a D.Z. Jackson, Donald Timothy Jackson, a/k/a
Donnie Jackson, John Dwight Jackson,
a/k/a Dwight Jackson,
Defendants-Appellants.
 No. 90-7800.
 United States Court of Appeals, Eleventh Circuit.
 Sept. 10, 1992.
 
 Matthew C. McDonald, Mobile, Ala., for Billy G. Ellis.
 Barre C. Dumas, Mobile, Ala., for James K. Ellis.
 Barry Hess, Mobile, Ala., for Dowling Z. Jackson.
 Richard R. Williams, Mobile, Ala., for Donald Timothy Jackson.
 Neil L. Hanley, Mobile, Ala., for John Dwight Jackson.
 J.B. Sessions, III, U.S. Atty., Richard H. Loftin, Asst. U.S. Atty., Mobile, Ala., for U.S.
 Appeals from the United States District Court for the Southern District of Alabama.
 Before ANDERSON, Circuit Judge, HILL, and ESCHBACH*, Senior Circuit Judges.
 ESCHBACH, Senior Circuit Judge:
 
 
 1
 The issue in this case is what steps law enforcement officers must take once they recognize that a search warrant has directed them to an erroneous address. In the present case, an inhabitant of the erroneous address told the officers where to go, and the officers went there without attempting to confirm this information. Billy Glenn Ellis, who resided at the second address and was subsequently convicted for two offenses relating to distribution of the drug dilaudid,[1] argues that his conviction should be set aside because his residence was searched, and three and one-half dilaudid pills were seized,[2] in violation of his rights under the Fourth Amendment to the United States Constitution. On the facts of this case, we believe that the officers' actions presented an excessive risk that the officers would engage in a "general search." As a result, we reverse Billy Ellis' convictions[3] and remand this case to the district court.
 
 Facts
 
 2
 On May 6, 1988, Deputy Nick LaManna prepared an affidavit for a search warrant. Based on his observations, LaManna requested a warrant to search "the third mobile home on the north side of Christian Acres Road" in Grand Bay, Alabama. R4-13 at 2; Exh. 2. The warrant and accompanying affidavit did not give any other information to narrow the search, and LaManna (at that time) did not know who inhabited the home. The documents did not indicate that the mobile home was owned or inhabited by Billy Ellis, but in fact indicated that the "[o]ccupant [was] unknown to affiant." Moreover, the documents did not describe the physical appearance of Ellis' mobile home in any way. In fact, the affidavit added nothing to the warrant.[4]
 
 
 3
 Officers other than LaManna executed the search. Although by this time the officers knew that they were looking for Billy Ellis' mobile home, they had no knowledge of what the mobile home looked like or where it was, apart from the information in the warrant and affidavit. As a result, the officers relied on the warrant and went to the third mobile home. Its inhabitant informed them that Billy Ellis actually lived at the fifth mobile home on the north side of the road. At this point, the officers did not call the station to corroborate this information, nor did they bother to procure a corrected warrant. Furthermore, the officers did not contact LaManna; although he was apparently nearby, he did not arrive at the fifth mobile home until after the officers had already begun the search. R6 at 12. Rather, the officers accepted the neighbor's word at face value and went directly to the fifth mobile home. After the officers had begun to search it, Deputy LaManna arrived and confirmed that this was the home he had observed, i.e., Billy Ellis' residence.
 
 
 4
 Based on these facts, Ellis argues that the warrant did not specify the place to be searched with sufficient particularity to satisfy the Fourth Amendment. The district court ruled against Ellis in a pre-trial suppression hearing, see R4-13, holding that even if the warrant was invalid, the officers had relied on it in good faith, so that the exclusionary rule should not apply. United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (setting forth good-faith exception); Massachusetts v. Sheppard, 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984) (applying good-faith exception to technical deficiency in warrant). At the subsequent trial, Ellis was convicted of the charged offenses, and he now appeals.
 
 Analysis
 
 5
 The "manifest purpose" of the "particularity requirement of the Fourth Amendment" is "to prevent general searches." Leon, 468 U.S. at 963, 104 S.Ct. at 3447 (Stevens, J., concurring). "By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." Maryland v. Garrison, 480 U.S. 79, 83, 107 S.Ct. 1013, 1016, 94 L.Ed.2d 72 (1987). This policy has undergirded the past cases in which courts have considered the admissibility of evidence seized pursuant to a warrant that specified an erroneous address. See, e.g., United States v. Burke, 784 F.2d 1090, 1092-93 (11th Cir.), cert. den., 476 U.S. 1174, 106 S.Ct. 2901, 90 L.Ed.2d 987 (1986); United States v. Collins, 830 F.2d 145, 146 (9th Cir.1987). Many of those courts have upheld the admission of the evidence, either by holding that the warrant was sufficient or by holding that the officers relied on the warrant in good faith. In all of those cases, however, the potential for a general search was minimal. See infra slip opinion at 3923-3924, 3925, 3925 n. 6.
 
 1. The Facial Validity of the Warrant
 
 6
 When evaluating a warrant, "[i]t is enough if the description is such that the officer with a search warrant can, with reasonable effort[,] ascertain and identify the place intended." Steele v. United States, 267 U.S. 498, 503, 45 S.Ct. 414, 416, 69 L.Ed. 757 (1925). More specifically, "[a] warrant's description of the place to be searched is not required to meet technical requirements or have the specificity sought by conveyancers. The warrant need only describe the place to be searched with sufficient particularity to direct the searcher, to confine his examination to the place described, and to advise those being searched of his authority." Burke, 784 F.2d at 1093.
 
 
 7
 As noted above, the only description of the place to be searched in the present case was the words: "third mobile home on the north side" of the road. The warrant did not describe the mobile home physically, unlike numerous warrants that have previously been upheld despite a mistaken address. See Burke, 784 F.2d at 1093; United States v. Weinstein, 762 F.2d 1522, 1532 (11th Cir.1985), cert. den., 475 U.S. 1110, 106 S.Ct. 1519, 89 L.Ed.2d 917 (1986); United States v. Figueroa, 720 F.2d 1239, 1243 n. 5 (11th Cir.1983); United States v. Avarello, 592 F.2d 1339 (5th Cir.), cert. den., 444 U.S. 844, 100 S.Ct. 87, 88, 62 L.Ed.2d 57 (1979); United States v. Melancon, 462 F.2d 82 (5th Cir.), cert. den., 409 U.S. 1038, 93 S.Ct. 516, 34 L.Ed.2d 487 (1972); United States v. Bonner, 808 F.2d 864 (1st Cir.1986), cert. den., 481 U.S. 1006, 107 S.Ct. 1632, 95 L.Ed.2d 205 (1987). Similarly, the name "Billy Ellis" did not appear anywhere on the warrant or the affidavit. As a result, the officers could not use their personal knowledge that Ellis was the target of the search to cure the warrant's deficiency. Cf. Burke, 784 F.2d at 1093; Weinstein, 762 F.2d at 1532; United States v. Darensbourg, 520 F.2d 985 (5th Cir.1975); Bonner, 808 F.2d at 867; United States v. Turner, 770 F.2d 1508 (9th Cir.1985), cert. den., 475 U.S. 1026, 106 S.Ct. 1224, 89 L.Ed.2d 334 (1986). Finally, the officers who executed the search were not the officers who had observed the mobile home previously, so they did not have any other knowledge that would have narrowed the search. Considering that the only information in the warrant was erroneous, we believe that the warrant did not describe the place to be searched with sufficient particularity.
 
 2. The Good-Faith Exception
 
 8
 Even though the warrant was invalid, it is possible that the purposes of the exclusionary rule would not be served by suppressing the evidence. In Leon, 468 U.S. at 900, 104 S.Ct. at 3409, the Supreme Court held that the exclusionary rule does not bar the use of evidence "obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause." The exception is justified because "the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." Id. at 916, 104 S.Ct. at 3417. In Massachusetts v. Sheppard, 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984), the Court considered whether the Leon exception permitted evidence to be introduced at trial even though the judge who issued the warrant had made a technical error in filling out the warrant. In that case, the judge had failed to incorporate the substance of the supporting affidavit, which indicated the things to be seized. The Supreme Court held that the exclusionary rule did not apply despite the error, because the officer who executed the search limited its scope to the items named in the affidavit, and the officer was entitled to rely on the judge's word that the warrant was correct. In sum, "it was the judge, not the police officers, who made the critical mistake." Id. at 990, 104 S.Ct. at 3429. At least two circuit courts have applied Sheppard to warrants that failed to specify the proper address of the place to be searched. See Bonner, 808 F.2d at 867 (good-faith exception covers warrant despite omission of address because mistake was by magistrate and officers reasonably relied on warrant); United States v. Curry, 911 F.2d 72, 77-78 (8th Cir.1990) (when warrant failed to specify address but affidavit did, good-faith exception covered search because executing officer knew where to search and failure of warrant to incorporate affidavit was merely technical error), cert. den., --- U.S. ----, 111 S.Ct. 980, 112 L.Ed.2d 1065 (1991).
 
 
 9
 Sheppard, Bonner, and Curry are all similar. In all of these decisions, the court noted that the officer who executed the search knew the items to be seized or the locale to be searched because he had prepared the affidavit supporting the warrant. Sheppard, 468 U.S. at 984, 104 S.Ct. at 3426; Bonner, 808 F.2d at 867; Curry, 911 F.2d at 78. The courts further noted that any error in the warrant was due to the magistrate or judge's technical failure to insure that the warrant reflected the information in the affidavit. Sheppard, 468 U.S. at 990, 104 S.Ct. at 3429; Bonner, 808 F.2d at 867; Curry, 911 F.2d at 78. Because the executing officers in all three cases knew where to search despite the technical error in the warrant, they seized the proper items or searched the proper location.[5] Sheppard, 468 U.S. at 987, 104 S.Ct. at 3427; Bonner, 808 F.2d at 867; Curry, 911 F.2d at 77-78 (implying but not stating that search was executed properly based on detective's personal knowledge). Thus, in all three cases, there was no danger of the officers undertaking a general search of an entire neighborhood.
 
 
 10
 This case is different. As mentioned above, the officer who knew which mobile home belonged to Billy Ellis did not join the search until later. Moreover, the error in the address derived from a mistake in observation by Deputy LaManna, R6 at 10, so it cannot be attributed to a clerical error on the part of the issuing magistrate. Because of these two factors, the officers initially attempted to search the wrong mobile home. As a result, the officers did not reasonably rely on the warrant in searching Billy Ellis' mobile home. In fact, the officers did not rely on the warrant at all; when the officers went to the third mobile home and discovered that the warrant was faulty, they relied on the word of the occupant of that mobile home that Ellis lived in the fifth mobile home.[6] And even if the officers can be said to have relied on the warrant, that reliance surely was not reasonable once the officers discovered that the only information in the warrant was erroneous. Leon, 468 U.S. at 923, 104 S.Ct. at 3421 ("a warrant may be so facially deficient-- i.e., in failing to particularize the place to be searched or the things to be seized--that the executing officers cannot reasonably presume it to be valid.").
 
 
 11
 The procedure employed in this case risked a general search. Had the neighbor given the officers the wrong address, they might have gone from home to home and attempted to search numerous mistaken residences. See Collins, 830 F.2d at 146 (excluding fruits of search when wrong address in warrant was officers' fault and caused them to attempt to search at least two mistaken premises). Moreover, the facial deficiency of the warrant indicated that the information supplied to the magistrate was suspect. See Wayne R. LaFave, Search and Seizure § 4.5(a), at 210 (West 2d ed. 1987). Thus, the officers may not have been entitled to presume that they could search Billy Ellis' residence at all. These possibilities indicate that an erroneous search was averted in this case by pure serendipity: the inhabitant of the third mobile home just happened to be home to stop the officers from searching that residence, and that inhabitant just happened to direct the officers to the correct mobile home. This is not a case where the officers "took every step that could reasonably be expected of them." Sheppard, 468 U.S. at 989, 104 S.Ct. at 3428. Once the officers recognized that the warrant specified the wrong address, they could have attempted to contact Detective LaManna, who could have insured that the officers' next stab was a correct one. Alternatively, the officers could have used the information from the inhabitant of the third mobile home to obtain a new, corrected warrant. Or perhaps there was some other means of confirming the location other than merely relying on the neighbor's word. Because the officers had better means of correcting their own error, the exclusionary rule must be applied in this case.[7] See Leon, 468 U.S. at 918, 104 S.Ct. at 3418 ("If exclusion of evidence obtained pursuant to a subsequently invalidated warrant is to have any deterrent effect, ... it must alter the behavior of individual law enforcement officers or the policies of their departments.").
 
 3. Harmless Error Analysis
 
 12
 We could still uphold Billy Ellis' convictions if the introduction of the dilaudid pills into evidence were harmless error. The United States has not pursued this argument in its brief. And based on our review of the record, we cannot say that the evidence was harmless beyond a reasonable doubt. The prosecution presented strong evidence against most of Ellis' co-defendants, including the testimony of two witnesses, Nora Jackson and Roxanne Miller, as well as corroborative physical evidence, such as large amounts of cash found on the defendants' persons, guns seized during a separate search, and notebooks identified as drug records. R7-408-409, 414, 421-26. The prosecution also had tapes of undercover buys from some of the defendants. R6-170, R7-454. None of this physical or tape-recorded evidence implicated Billy Ellis, however; his conviction rested entirely on the testimony of Jackson and Miller. Jackson was a drug dealer who had cut a favorable deal with the prosecution; Miller, a drug dealer and addict who was also testifying pursuant to a deal. Moreover, neither testified extensively regarding Billy Ellis; they both had more information regarding the other defendants in this case. See R6 at 126-131; R7 at 374-76. As a result, the jury could have believed that the three and one-half dilaudid pills provided essential corroboration for these arguably unreliable and biased witnesses. The introduction of the evidence was not harmless beyond a reasonable doubt.
 
 Conclusion
 
 13
 Accordingly, we REVERSE the order of the district court, GRANT the defendant's motion to suppress, and REMAND to the district court.
 
 
 
 *
 Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation
 
 
 [1]
 Ellis was convicted of conspiracy to distribute and possess with the intent to distribute hydromorphone hydrochloride, also known as dilaudid, and for possession with intent to distribute dilaudid
 
 
 [2]
 A firearm, for which Ellis' sentence was enhanced, was also found in this search
 
 
 [3]
 In this opinion, we deal only with Billy Ellis' argument that the evidence introduced against him at trial was obtained in violation of his rights under the Fourth Amendment to the United States Constitution. We need not reach Billy Ellis' other contentions, and we affirm the convictions of the other appellants pursuant to Circuit Rule 36.1
 
 
 [4]
 The warrant and affidavit described the place to be searched in identical terms: "A Mobile Home located on Christian Acres Rd. in Grand Bay, Alabama. It will be the third mobile home on the north side of Christian Acres Road. Christian Acres Road is the first road no[r]th of the Interstate traveling north on Hall Road. Occupant is unknown to affiant at this time. Search is to include all outbuildings and vehicles on the property." Exh. 2 at 1, 3. In a separate portion of the affidavit titled "The FACTS establishing probable cause for search are," the mobile home was not described in any greater detail. Exh. 2 at 3
 
 
 [5]
 Indeed, the cases which have admitted evidence despite an erroneous address in the warrant, whether by holding that the warrant was not fatally defective or by holding that the officers were entitled to the benefit of the good-faith exception, have apparently shared one factor: other information in the warrant led the officers to the correct address. Sometimes, as in Sheppard, Bonner, and Curry, the Court noted this fact explicitly. In the other cases noted above, the court did not mention that any wrong premises were searched. Moreover, at least one court has considered the fact that the wrong premises were searched integral to its conclusion that the search was unconstitutional. See United States v. Collins, 830 F.2d 145 (9th Cir.1987)
 
 
 [6]
 For the sake of clarity, we note that if the officers had discovered some incriminating evidence against the inhabitant of the third mobile home, and that individual was now appealing from a conviction, the Leon rule would perhaps be applicable. Under those circumstances, the officers would have been relying on the warrant. That is basically what occurred in Maryland v. Garrison, 480 U.S. 79, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987)
 
 
 [7]
 We note that in circumstances not presenting the potential for a general search, it might be reasonable for officers to continue a search despite a deficiency in a warrant. In United States v. Bentley, 825 F.2d 1104, 1109 (7th Cir.), cert. den., 484 U.S. 901, 108 S.Ct. 240, 98 L.Ed.2d 198 (1987), the officers commenced a search of a corporation's office. At one point, the officers realized that the warrant erroneously authorized them to search Room 203, when Room 201 was in fact intended. The officers searched the proper room without securing a corrected warrant. The court held that "the officers did just what they should" because "the right number was readily ascertainable." That case did not involve the potential for a general search, however. First, the officers were apparently choosing between separate rooms in an office occupied by a corporation, rather than separate houses occupied by separate individuals. Thus, there was no danger of invading the privacy of a person under no suspicion at all, or of searching an entire neighborhood. Second, the right office number was "readily ascertainable," so the risk of an erroneous search was low. And third, there is no suggestion in Bentley that the mistake in the warrant was anything other than a technical error attributable to the issuing magistrate. See also Maryland v. Garrison, 480 U.S. 79, 98, 107 S.Ct. 1013, 1024, 94 L.Ed.2d 72 (1987) (dissent suggested that officer should have tried to cure ambiguity in warrant by questioning a neighbor, but there was no danger of a general search because the officer was simply choosing between two apartments on a specified floor of an apartment building)