**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3552
_____

UNITED STATES OF AMERICA,
Appellant

v.

MICHAEL WRIGHT and
RANDALL WRIGHT

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Nos. 5-09-cr00270-001 & 5-09-cr0027-0002)
District Judge: Honorable Lawrence F. Stengel

_____

Argued on September 20, 2011

Before: AMBRO, CHAGARES and ALDISERT, <u>Circuit Judges</u>.

(Filed: August 16, 2012)

Zane David Memeger, United States Attorney
Robert A. Zauzmer, Assistant United States Attorney (Argued)
Seth Weber, Assistant United States Attorney
Office of the United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
     <u>Counsel for Appellant United States of America</u>

Mark S. Greenberg (Argued)
1429 Walnut Street, Suite 1301
Philadelphia, PA 19102
     <u>Counsel for Appellee Michael Wright</u>

Michael N. Huff
1333 Race Street
Philadelphia, PA 19107
     Counsel for Appellee Randall Wright

_____

OPINION OF THE COURT
_____

ALDISERT, Circuit Judge.

The government appeals from the District Court for the Eastern District of Pennsylvania's grant of Appellees' motions to suppress evidence seized from their apartments after the execution of two search warrants. The District Court held that the warrants ran afoul of the Fourth Amendment's particularity requirement by failing to "describe . . . the things to be seized," U.S. Const. amend. IV. Construing our precedent, the District Court concluded that the warrants' facial deficiencies obviated the need to "consider[][the] [o]fficer['s] . . . level of responsibility for the error in this case," App. 035, and instead, triggered an automatic application of the exclusionary rule.

Although the government concedes that the executed warrants were facially invalid, it nonetheless challenges the District Court's decision to suppress the evidence. We conclude that the District Court—although its ultimate conclusion may prove to be correct—erred in holding that the warrants' "facial[] invalid[ity]" necessarily required suppression of the evidence, id., without first engaging in the Supreme Court's prescribed exclusionary rule analysis. We will therefore vacate and remand the case to permit the District Court to make findings of fact and to perform the requisite analysis.

I.

Because we write primarily for the parties, who are familiar with the facts and the proceedings in the District Court, we will revisit them only briefly.

A.

The Wright brothers (Michael and Randall, not the historically famous aviators) live in apartments one block apart in Allentown, Pennsylvania. In 2008 and 2009, the Drug Enforcement Agency (DEA) suspected the brothers of using the apartments to sell marijuana. Its suspicions were confirmed in January 2009, when a DEA informant twice bought a pound of marijuana from Michael Wright. The informant also reported seeing Randall Wright with large amounts of cash. Swearing to these facts in an affidavit of probable cause, DEA Agent Jeffrey Taylor sought warrants for the search of the Wrights' apartments. A Magistrate Judge issued the warrants on January 27, 2009, and they were executed the same day.

During the search of Randall Wright's apartment, DEA agents recovered four guns, several boxes of ammunition, about $7,900 in cash, 50 pounds of marijuana, and assorted drug paraphernalia. In Michael Wright's apartment, they found approximately $1,000 in cash, 43 pounds of marijuana, and assorted drug paraphernalia.

B.

A grand jury indicted the Wrights for violations of various drug and firearms statutes. Before trial, the Wrights moved to suppress the evidence found, arguing that the warrants were invalid. The District Court held a suppression hearing, during which Agent Taylor testified that an ordinary warrant request begins with three documents: an affidavit of probable cause, a warrant application, and a face sheet. The affidavit of probable cause sets forth the facts justifying the warrant. The warrant application and face sheet are both

preprinted forms with blank spaces in which the applicant is instructed to describe the person or property to be seized. It is common for applicants to fill in these sections by writing, "See ATTACHMENT A" or "See ATTACHMENT B." Attachment A is normally a description of the property to be searched, and Attachment B is normally a listing of the items to be searched for or seized.

In Agent Taylor's experience, a DEA agent ordinarily completes the affidavit of probable cause, and the United States Attorney's Office ordinarily prepares the warrant application and face sheet. The U.S. Attorney's Office then attaches the warrant application and face sheet to the DEA agent's affidavit of probable cause and submits the entire package to a Magistrate Judge for evaluation. Upon approval, the Magistrate Judge signs the face sheet, and the face sheet becomes the warrant. The appurtenant documents (e.g., the affidavit of probable cause, warrant application, and any other supporting documents) may or may not remain attached to the warrant when it is executed.

Those appear to be the procedures followed in this case: Agent Taylor prepared an affidavit of probable cause to search the Wrights' apartments, and an Assistant United States Attorney prepared two warrant applications and face sheets and submitted the entire package to a Magistrate Judge. In this case, however, the Assistant United States Attorney filled out the items-to-be-seized section of each face sheet with the words, "SEE ATTACHED AFFIDAVIT OF PROBABLE CAUSE," and the items-to-be-seized section of the warrant application with the words, "SEE ATTACHMENT A."

The problem in this case is that ATTACHMENT A describes the properties to be searched and not the items to be seized. Although the AFFIDAVIT OF PROBABLE CAUSE does state the items to be seized, it was removed from the warrants at the government's request, impounded, and sealed before the warrants were executed. As a

4

result, although complete when signed by the Magistrate Judge, the final warrants lacked any description of the items to be seized at the time they were executed.

When asked at the suppression hearing whether he noticed that the warrants lacked an ATTACHMENT B or any other description of the items to be seized, Agent Taylor explained that he had been very busy organizing the raids upon the Wrights' apartments and had not noticed the deficiency. He testified that he was "intimately familiar" with the Fourth Amendment's requirement that warrants state with particularity the items to be seized during a search, but in this case he had relied upon the United States Attorney's office to complete the warrant process properly. App. 105. Although he knew that the warrants should have included a list of items to be seized, Agent Taylor testified that he "didn't take notice" of the list, or lack thereof, and "just assumed everything that was supposed to be there was there." App. 112.

After hearing this evidence, the District Court granted the Wrights' suppression motions. It held that the warrants were invalid because they failed to meet the Fourth Amendment's explicit directive to describe with particularity the items to be seized, and it rejected the government's argument that a good faith exception to the exclusionary rule should apply because, in the government's view, its constitutional violations stemmed from a "clerical error" rather than police misconduct. The government timely appealed.

II.

The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under to 18 U.S.C. § 3731. We apply a mixed standard of review in the suppression context, reviewing "findings of fact for clear error," but exercising "plenary review over its legal conclusions." United States v. Tracey, 597 F.3d 140, 146 (3d Cir. 2010).

III.

We agree with the District Court that the warrants in this case—neither of which described any items to be seized—were invalid on their face. Whether the execution of the invalid warrants required suppression, however, is a question that requires a more thorough examination of law enforcement culpability than the inquiry undertaken by the District Court here. Because we, as a court of review, are not equipped to now find facts about culpability that would be needed for an exclusionary rule analysis, we will remand.

A government search of a private home presumptively violates the Fourth Amendment absent exigent circumstances or a valid warrant. See Payton v. New York, 445 U.S. 573, 576 (1980). To be valid, the relevant portion of the Fourth Amendment requires that a warrant "*particularly describ*[*e*] the place to be searched, and the persons or *things to be seized*." U.S. Const. amend. IV (emphases added). The particularity requirement—"the touchstone of [the] warrant," Doe v. Groody, 361 F.3d 232, 239 (3d Cir. 2004)—is satisfied by expressly listing items to be seized or expressly incorporating by reference an affidavit that lists such items. See Bartholomew v. Pennsylvania, 221 F.3d 425, 428-429 (3d Cir. 2000) (holding that if a warrant's particularity depends upon incorporated documents, those documents must physically accompany the warrant). The requirement that the warrant particularly describe—rather than imply or assume—the items to be seized is critical to serving one of the Fourth Amendment's key purposes: "to limit the [searching] agents' discretion as to what they are entitled to seize." Id. at 429.

For that reason, we have imposed two requirements upon warrants that seek to satisfy the particularity requirement through incorporation by reference to an affidavit. First, "the warrant must expressly incorporate the affidavit, and the incorporation must be clear." Tracey, 597 F.3d at 147 (quotation omitted). Second, the affidavit must

accompany the warrant; it cannot be impounded and sealed. See Bartholomew, 221 F.3d at 429-430 ("[W]here the list of items to be seized does not appear on the face of the warrant, sealing that list, even though it is 'incorporated' in the warrant, would violate the Fourth Amendment."); cf. Groh v. Ramirez, 540 U.S. 551, 558 (2004) (refusing to consider documents placed under seal because they did not "accompany the warrant").

The District Court determined that the warrants here were invalid because they did not particularize the items to be seized from the Wrights' apartments. Although the warrants purported to incorporate by reference Agent Taylor's affidavit of probable cause, that affidavit did not actually accompany the warrants when they were executed because it was—at the government's request—impounded and filed under seal. The face of each Wright warrant thus lacked any description of the items to be seized, and the government did not properly incorporate into either warrant any document that satisfied the Fourth Amendment's particularity requirement. As a result, the searches of the Wrights' apartments were essentially "warrantless" within the meaning of the Fourth Amendment—a fact the government conceded at oral argument.

Although the government concedes that the warrants were defective, it nevertheless maintains that our holding in Bartholomew—that a warrant is invalid if it depends entirely upon a sealed affidavit for particularity, 221 F.3d at 428-429—is "subject to doubt," Brief for United States 20, and asks us to reconsider whether a sealed affidavit can satisfy the Fourth Amendment's particularity requirement after all.

In Groh, the Supreme Court considered a warrant that not only failed to describe the items to be seized—like the warrants here—but also failed to incorporate *any* document by reference. See 540 U.S. at 558. The Court rejected the argument that an affidavit of probable cause, presented to the magistrate judge and then filed under seal,

7

saved the warrant's validity: "The fact that the *application* adequately described the 'things to be seized' does not save the *warrant* from its facial invalidity. The Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents." Id. at 557.

The government's position is that Groh is distinguishable because the warrant there did not purport to incorporate other documents, unlike the warrants in this case, which referred to sealed documents. Based upon this distinction, the government urges us to reconsider Bartholomew, wherein we stated that if a warrant's particularity depends upon an affidavit of probable cause, the affidavit cannot be filed under seal. 221 F.3d at 428-429. Because the warrant application here ultimately referred to the requisite information, the government contends that we should view the misstep here as a "clerical error," and not a search pursuant to an invalid warrant. Reply Brief for United States 9.

We are not impressed by the government's position, for four reasons. First, the government's arguments cannot be reconciled with the plain text of the Constitution. Documents that do not include a particular description of items to be seized are so facially deficient that they do not qualify as "warrants" at all. See Groh, 540 U.S. at 558 (holding that when a "warrant did not describe the items to be seized *at all*," it "was so obviously deficient that we must regard the search as 'warrantless'"). Applying that rule, we conclude that the searches here were warrantless within the meaning of the Fourth Amendment and presumptively invalid. See Payton, 445 U.S. at 576.

Second, volumes of substantial authority support our conclusion. The Supreme Court has explained that a search was unconstitutional because the warrant failed to describe items to be seized and "did not incorporate other documents by reference, nor did either the affidavit or the application (which had been placed under seal) accompany

8

the warrant." <u>Groh</u>, 540 U.S. at 558. Our Court has consistently ruled that a warrant cannot satisfy the particularity requirement solely by relying upon a sealed affidavit. <u>E.g.</u>, <u>Bartholomew</u>, 221 F.3d at 429; <u>see</u> <u>also</u> <u>Tracey</u>, 597 F.3d at 147 n.6 (observing that "because [the incorporated affidavit] was sealed, the Court [in <u>Bartholomew</u>] concluded that it could not be used to construe the scope of the warrant"). So have our sister Courts of Appeals.[1] All of this authority points to one conclusion: sealed affidavits cannot rescue a warrant that otherwise lacks particularity.

Third, and contrary to the government's contentions, we conclude that <u>Groh</u> does not support its position whatsoever. The government attempts to distinguish <u>Groh</u> on the sole ground that the warrant there did not incorporate *any* documents by reference, whether sealed or not. But the dispositive fact in <u>Groh</u> was not what documents the warrant purported to incorporate; it was that the face of the warrant utterly "failed to identify any of the items" to be seized. 540 U.S. at 554. The Court could not have more clearly stated its view of that failure's effect: "The warrant was plainly invalid." <u>Id.</u> at 557. The Court explained that a constitutional *application* for a warrant "does not save

---

[1] <u>See, e.g.</u>, <u>United States v. McGrew</u>, 122 F.3d 847, 849 (9th Cir. 1997) (holding that an incorporated affidavit did not provide particularity because the government "offered no evidence that the affidavit or any copies were ever attached to the warrant or were present at the time of the search"); <u>United States v. Dahlman</u>, 13 F.3d 1391, 1395 (10th Cir. 1993) (holding that the government cannot rely upon affidavits not attached to the warrant itself to satisfy the particularity requirement); <u>United States v. Dale</u>, 991 F.2d 819, 846 (D.C. Cir. 1993) (stating that incorporation of an affidavit provides particularity only if the affidavit accompanies the warrant); <u>United States v. Morris</u>, 977 F.2d 677, 681 n.3 (1st Cir. 1992) ("An affidavit may be referred to for purposes of providing particularity if the affidavit accompanies the warrant."); <u>United States v. Curry</u>, 911 F.2d 72, 77 (8th Cir. 1990) ("[A] description in the supporting affidavit can supply the requisite particularity" for a valid warrant if "the affidavit accompanies the warrant" and "the warrant uses suitable words of reference which incorporate the affidavit therein.") (internal quotation marks and citations omitted).

the *warrant* from its facial invalidity." Id. We see no reason to reach a different conclusion here.

Finally, we are not persuaded by the government's attempt to attribute the warrants' defects to a "clerical error." Reply Brief for United States 9. The requirement that warrants state with particularity items to be seized is not merely clerical. Rather, "[a]s the text of the Fourth Amendment itself denotes, a particular description is the touchstone of a warrant." Doe, 361 F.3d at 239. Indeed, Groh itself stated that a lack of particularity cannot "be characterized as a mere technical mistake or typographical error." 540 U.S. at 558. Simply put, there is no such thing as a broad "clerical error" exception to the government's Fourth Amendment obligations.

The bottom line is this: in Groh, the Supreme Court held that if an affidavit of probable cause that describes items to be seized is presented to a Magistrate Judge, who authorizes a warrant, but the affidavit is not attached to the warrant and the warrant does not otherwise list "items to be seized," the warrant is so "plainly invalid" that a search conducted pursuant to it is "warrantless." 540 U.S. at 557-558. In Bartholomew, we held that an affidavit of probable cause that is filed under seal cannot satisfy a warrant's particularity requirement because such an affidavit is not attached to the warrant. 221 F.3d at 428-429. Nothing in Groh calls Bartholomew into question; each case applies identical reasoning to similar facts, and each reaches an identical, unremarkable conclusion: warrants must particularly describe items to be seized. We therefore decline the government's invitation to depart from binding authority.

IV.

Having settled that the warrants were deficient, we turn to the issue of whether their deficiencies, when coupled with the law enforcement conduct here, require

10

suppression of the evidence found during the search. We conclude that the District Court's decision to suppress evidence was premised on an insufficient evaluation of police culpability and other facts crucial to a determination to exclude evidence. We will, therefore, remand to the District Court for further analysis.

Although evidence seized pursuant to an invalid warrant may not usually be admitted at trial, see Payton, 445 U.S. at 576; see also Weeks v. United States, 232 U.S. 383, 398 (1914), "[e]xclusion is not a personal constitutional right, nor is it designed to redress the injury occasioned by an unconstitutional search," Davis v. United States, 131 S. Ct. 2419, 2426 (2011). Instead, "[t]he rule's sole purpose . . . is to deter future Fourth Amendment violations." Id. (citing Herring v. United States, 555 U.S. 135, 141 & n.2 (2009), United States v. Leon, 468 U.S. 897, 909, 921, n.22 (1984)), and Elkins v. United States, 364 U.S. 206, 217 (1960) ("calculated to prevent, not to repair")).

In Davis, the Supreme Court clarified the two prerequisites for exclusion. First, because "the *sole* purpose of the exclusionary rule is to deter misconduct by law enforcement," 131 S. Ct. at 2432 (citations omitted), we must determine whether exclusion would have "[r]eal deterrent value," id. at 2427. Second, because "exclusion exacts a heavy toll on both the judicial system and society at large" by "requir[ing] courts to ignore reliable, trustworthy evidence" and "in many cases . . . setting the criminal loose in the community without punishment," "the deterrence benefits of suppression must outweigh its heavy costs." Id. (internal citations omitted); see id. at 2436 (Sotomayor, J., concurring) ("[T]he ultimate questions have always been, one, whether exclusion would result in appreciable deterrence and, two, whether the benefits of exclusion outweigh its costs." (citations omitted)). Accordingly, "[p]olice practices trigger the harsh sanction of exclusion only when they are deliberate enough to yield

11

'meaningfu[l]' deterrence, and culpable enough to be 'worth the price paid by the justice system,'" id. at 2428 (majority opinion) (quoting Herring, 555 U.S. at 144).

Whether to apply the exclusionary rule depends on an evaluation of the nature of police conduct. When law enforcement officers "exhibit 'deliberate,' 'reckless,' or 'grossly negligent' disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs." Davis, 131 S. Ct. at 2427 (quoting Herring, 555 U.S. at 144). On the other hand, "when police mistakes are the result of negligence . . . rather than systemic error or reckless disregard of constitutional requirements, any marginal deterrence does not 'pay its way.'" Herring, 555 U.S. at 147-148 (quoting Leon, 468 U.S. at 907 n.6). A district court must assess all of the facts and circumstances in determining whether the exclusionary rule should apply. See Murray v. United States, 487 U.S. 533, 543 (1988) ("[I]t is the function of the District Court rather than the Court of Appeals to determine the facts . . . ."); Pullman-Standard v. Swint, 456 U.S. 273, 291 (1982) ("When an appellate court discerns that a district court has failed to make a finding because of an erroneous view of the law, the usual rule is that there should be a remand for further proceedings to permit the trial court to make the missing findings."); Myers v. Am. Dental Ass'n, 695 F.2d 716, 738 (3d Cir. 1982) ("As we have said innumerable times, it is not the proper role of this court to make findings of fact in the first instance.").

Here, the District Court did not undertake this assessment of the facts and circumstances with respect to the behavior of law enforcement. After recognizing that exclusion is appropriate only when the level of police culpability is "deliberate, reckless, or grossly negligent," Davis, 131 S. Ct. at 2427 (quotations omitted), the District Court "acknowledge[d] "that the level of 'police culpability' in this case is low." App. 035.

Nevertheless, the Court then concluded the exclusion was required. Indeed, based on its erroneous assumption that a facially invalid warrant automatically triggered a per se application of the exclusionary rule, the District Court reasoned that no further "consideration of Officer Taylor's level of responsibility" was necessary. Id.

In failing to "consider[] . . . Officer Taylor's level of responsibility" and incorrectly assuming that our precedents stand for the bright-line proposition that exclusion is always required in instances of a facially invalid warrant, the District Court erred. First, to the extent that its brief aside that "the level of 'police culpability' in this case [was] low" was a factual finding about culpability, id., that statement cannot be squared with its decision to apply the exclusionary rule. As noted above, only police behavior that can be characterized as "'deliberate,' 'reckless,' or 'grossly negligent'" merits exclusion. Davis, 131 S. Ct. at 2427 (quoting Herring, 555 U.S. at 144). Merely negligent behavior does not. See Herring, 555 U.S. at 147-148. Wherever "low" might fall on the culpability scale, it does not usually, if ever, refer to grossly negligent behavior. Without a more thorough factual evaluation, though, we cannot conjecture as to "low['s]" intended meaning here.

Second, the District Court's decision to not undertake a factual analysis of culpability before applying the exclusionary rule seems to be driven, at least in part, by its misplaced reliance on a statement in our opinion in United States v. Tracey, 597 F.3d 140 (3d Cir. 2010), and a conflation of the similar-but-separate good faith exception and exclusionary rule doctrines. See App. 035 (citing Tracey). In Tracey and in subsequent cases we have stated in dicta that the good faith exception will rarely be available in cases in which "the warrant [is] so facially deficient that it fail[s] to particularize the place to be searched or the things to be seized." Virgin Islands v. John, 654 F.3d 412, 418 (3d Cir.

13

2011) (quoting <u>Tracey</u>, 597 F.3d at 151). But, as "the good-faith exception is a judicially created exception to" the exclusionary rule, <u>Davis</u>, 131 S. Ct. at 2434, although qualifying for the good faith exception may result in admitting evidence, not qualifying for it does not mean that the evidence will be suppressed. Hence, the commonsense acknowledgement that the good faith exception may prove unavailable in a certain set of cases in no way relieves a court of its responsibility to undertake a culpability analysis before applying the exclusionary rule.

Rather, a court must always analyze whether the exclusionary rule should apply before suppressing evidence. Indeed, the exclusionary rule is not "a strict-liability regime," <u>Davis</u>, 131 S. Ct. at 2429, and "[n]ot every deficient warrant . . . will be so deficient that an officer would lack an objectively reasonable basis for relying upon it. . . . [and] [w]e must consider all of the circumstances, not only the text of the warrant." <u>United States v. Otero</u>, 563 F.3d 1127, 1134 (10th Cir. 2009) (quotations omitted). Accordingly, whether to apply the remedy of exclusion or not ultimately "depend[s] on the circumstances of the particular case." <u>Leon</u>, 468 U.S. at 923; <u>see id.</u> at 922 n.23 ("In making this determination, all of the circumstances . . . may be considered."); <u>id.</u> at 924-925 ("[C]ourts have considerable discretion in conforming their decisionmaking processes to the exigencies of particular cases.").

Given the tenor and detail of the District Court's 31-page opinion, and in light of its ultimate decision to suppress the evidence, its characterization of the government's misconduct here as exhibiting simply a "low" level of culpability is perplexing. Indeed, we cannot readily reconcile that statement with the *ratio decidendi* of the Court's opinion up to that point. Whatever its rationale may have been, though, the District Court simply did not elaborate on its reasons for that statement, and it did not engage in the required

analysis to determine whether the exclusionary rule should apply. On appeal, although our review of the available facts might lead us to reach the same ultimate decision to suppress the evidence, we are not in a position to reach out and undertake an analysis that is better left to the District Court in the first instance. See United States v. Master, 614 F.3d 236, 243 (6th Cir. 2010) ("While it appears at first blush that suppression might be inappropriate in this case, we will remand to the district court for the purpose of re-examining the facts and balancing the interests as required by Herring."); United States v. Julius, 610 F.3d 60, 67, 68 (2d Cir. 2010) ("[O]n remand, the district court may consider whether the circumstances of this search, considered in their totality, support application of the exclusionary rule under Herring. . . . Herring requires careful consideration by district courts of whether the goal of deterring violations of the Fourth Amendment outweighs the costs to truth-seeking and law enforcement objectives in each case."). Accordingly, we will vacate the District Court's decision and remand to allow the District Court to make further findings and to perform the required exclusionary rule analysis.

\* \* \* \* \*

We have considered all of the arguments advanced by the parties and conclude that no further discussion is necessary. The judgment of the District Court will be VACATED and REMANDED for further proceedings consistent with this opinion.