[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-16250
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 29, 2010
JOHN LEY
CLERK

D. C. Docket No. 08-00242-CR-5-IPJ-HGD

UNITED STATES OF AMERICA,


                                                                    Plaintiff-Appellee,


versus


YOLANDA GOODLOW,
ROBERT MICHAEL EVANS,
a.k.a. Hot Dog,
a.k.a. Hot Boy,


                                                                    Defendants-Appellants.


_____

Appeals from the United States District Court
for the Northern District of Alabama

_____

(July 29, 2010)


Before BARKETT, WILSON and ANDERSON, Circuit Judges.

PER CURIAM:

Robert Michael Evans and Yolanda Goodlow appeal their convictions stemming from a multi-count indictment in which they were co-defendants. Evans appeals his convictions and sentence of life imprisonment for (1) conspiracy to distribute and possession with intent to distribute 100 kilograms or less of marijuana, and between 500 grams and 5 kilograms of cocaine, in violation of 21 U.S.C. §§ 841 and 846; (2) distribution of a quantity of marijuana, in violation of 21 U.S.C. § 841; (3) use of a communication facility to facilitate the commission of a felony drug-trafficking crime, in violation of 21 U.S.C. § 843; and (4) being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Goodlow appeals following her convictions for conspiracy to distribute and possess with intent to distribute 100 kilograms or less of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1), and 846, and use of a communication facility to facilitate the commission of a felony drug-trafficking crime, in violation of 21 U.S.C. § 843(b).

On appeal, Evans argues that the district court: (1) plainly erred by trying him and Yolanda Goodlow together; (2) plainly erred by admitting a drug lab report into evidence without requiring the direct testimony of the lab technician, in violation of Evans's constitutional rights under the Confrontation Clause; (3) erred in finding there was sufficient evidence to support his conviction for conspiracy;

2

(4) plainly erred by finding that Evans was a career offender; (5) clearly erred by enhancing Evans's offense level under U.S.S.G. § 2D1.1(b)(1) for possession of a firearm; and (6) imposed an unreasonable sentence of life imprisonment. Goodlow claims that the district court erred by denying her motion to suppress evidence seized from her mobile home because the search warrant lacked probable cause and did not identify her mobile home with specificity.

## I. BACKGROUND

The indictments against Evans and Goodlow arose from the investigation of a large-scale drug distribution enterprise involving Reco Willingham. The government indicted thirty-three individuals, including Evans, Goodlow, and Willingham, on a plethora of charges relating to a drug conspiracy they entered into from 2004 to 2008. Willingham pleaded guilty and testified against Evans and Goodlow.

Willingham testified that he purchased marijuana and cocaine in bulk from Galdino Zamora. He then sold 10–15 pounds of marijuana to Evans 2–3 times a month. Willingham also supplied Evans with cocaine, starting out with one kilogram and then increasing to multiple kilograms. Evans had other suppliers of cocaine and marijuana. In fact, Evans often supplied Willingham with high quality marijuana and offered to supply Willingham with cocaine.

3

Goodlow is Willingham's older sister who lived in a trailer home located on a piece of Willingham's property. Willingham kept large amounts of money in a safe in Goodlow's bedroom closet. Goodlow witnessed Willingham put money in and take money out of the safe. Willingham also kept several kilograms of cocaine in Goodlow's trailer with Goodlow's full knowledge. Goodlow witnessed Willingham's cousin come into her home to pick up a couple kilograms of cocaine for Willingham. Furthermore, Goodlow arranged a deal for the sale of six pounds of marijuana from Willingham to one of her coworkers.

When the government executed search warrants for Evans's property they recovered several firearms. At his restaurant, a pistol was found laying on top of a safe containing $27,000 in cash. At Evans's home, two rifles, a shotgun, and pistol were recovered. A search warrant for Willingham's property recovered 18 kilograms of cocaine in Goodlow's trailer, $101,300 in cash from the safe in Goodlow's bedroom, and two handguns on Goodlow's dresser. Additionally, 85 pounds of marijuana were recovered from another structure on the same property.

A jury found Evans guilty of conspiracy, possession with intent to distribute marijuana, use of a telephone to facilitate a drug trafficking offense, and being a felon in possession of a firearm. At sentencing Evans received enhancements for possessing dangerous weapons and being a career offender. Evans did not object

4

to being classified as a career offender. The court then sentenced Evans to life imprisonment on the basis of his history, characteristics, the need to protect the public, the desire to provide just punishment and future deterrence of others, and to avoid unnecessary sentencing disparities among other defendants.

The same jury found Goodlow guilty of conspiracy involving marijuana less than 100 kilograms and using a telephone to facilitate a drug trafficking crime. Goodlow received a sentence of 41 months imprisonment.

## II. DISCUSSION

### A.   *Evans*

#### 1.   *Severance*

First, Evans argues that he should have been tried separately from Goodlow and that his trial counsel was ineffective for failing to move for severance. Goodlow's counsel previously represented the individual charged with murdering Evans's wife and Evans contends that this representation created a conflict of interest because counsel "was privy to discovery relating" to Evans's illegal activities in the previous murder case.

Where the defendant has failed to raise an issue below, we review for plain error. *United States v. Rodriguez*, 398 F.3d 1291, 1298 (11th Cir. 2005).[1]

_____

[1]Plain error requires the defendant to show: (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) "seriously affect[s] the fairness, integrity, or public reputation of

"[T]he general rule is that Defendants indicted together should be tried together, especially in conspiracy cases." *United States v. Chavez*, 584 F.3d 1354, 1360 (11th Cir. 2009). "To succeed on appeal the Defendant must carry the heavy burden of demonstrating the lack of a fair trial due to actual, compelling prejudice." *Id*. There are four typical cases where severance may be required: "(1) [w]here the Defendants rely upon mutually antagonistic defenses; (2) [w]here one Defendant would exculpate the moving defendant in a separate trial, but will not testify in a joint setting; (3) [w]here inculpatory evidence will be admitted against one Defendant that is not admissible against the other; and (4) [w]here a cumulative and prejudicial "spill over" effect may prevent the jury from sifting through the evidence to make an individualized determination as to each Defendant." *Id.* at 1360–61 (citations omitted).

Evans has not clearly shown that his connection to Goodlow's attorney created a situation that deprived him of a fair trial. Evans did not state a clear reason why Goodlow's attorney would want to question Evans about his illegal activities or how such questions would benefit Goodlow. Evans has not met his burden of showing that being tried with Goodlow was compelling prejudice that

---

judicial proceedings." *United States v. Cotton*, 535 U.S. 625, 631–32, 122 S. Ct. 1781, 1785 (2002) (alterations in original) (citation omitted). For an error to affect substantial rights, "[i]t must have affected the outcome of the district court proceedings." *United States v. Olano*, 507 U.S. 725, 734, 113 S. Ct. 1770, 1778 (1993).

seriously affected the fairness, integrity or public reputation of his criminal trial.

As for Evans's claim of ineffective assistance of counsel, we do not reach that

issue at this time.[2]

### 2. Confrontation Clause

Second, Evans argues that admission of the forensic lab reports of the

confiscated drugs violated the Confrontation Clause because the reports were

testimonial evidence and he should have been able to confront the forensic chemist

through cross-examination. Therefore, the drug lab reports should be suppressed

and he should have a new trial. Evans admits that he entered into stipulations that

the reports were admissible and that the chemist, if called to testify, would be

qualified and would testify consistently with the reports, but claims that he entered

the stipulations prior to the decision in *Melendez-Diaz v. Massachusetts*, __ U.S.

__, 129 S. Ct. 2527, 2531–33 (2009) (affidavits of a chemist, stating that the

analyzed substances were cocaine, were testimonial statements subject to the

Confrontation Clause). Thus, he contends that the "agreements were without full

---

[2]We will not "consider claims of ineffective assistance of counsel raised on direct appeal where the district court did not entertain the claim nor develop a factual record." *United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir. 2002) (citation omitted). The record in regards to the issue of ineffective assistance of counsel has not been adequately developed. The preferable means for deciding a claim of ineffective assistance of counsel is through a 28 U.S.C. § 2255 motion "even if the record contains some indication of deficiencies in counsel's performance." *Massaro v. United States*, 538 U.S. 500, 504, 123 S. Ct. 1690, 1694 (2003). Further, Evans merely mentioned this issue cursorily in his brief and therefore, Evans has waived review of this issue. *See Access Now, Inc. v. Southwest Airlines, Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004).

and complete knowledge of the rights applicable under the Confrontation Clause of the United States Constitution."[3]

We find no merit to this argument. This is not a case of Evans merely failing to object; rather, he actually stipulated to the admissability of the tests without the presence of the lab technician at trial. Where "[d]efense counsel effectively caused the injury about which he now complains . . . . [it is] invited error [and] constitutes neither plain nor reversible error." *United States v. Parikh*, 858 F.2d 688, 695 (11th Cir. 1988) (citation omitted). The result of this stipulation, that Evans would not be able to cross examine the lab technician, was clear at the time the stipulation was made. The fact that the Supreme Court subsequently issued an opinion clarifying the extent of the Confrontation Clause does not provide a basis for this Court to find plain error in the admittance of evidence upon stipulation of the defendant. *Melendez-Diaz* did not overturn any case law relied upon by the district court, or alter the previous interpretation of the Confrontation Clause; rather, it merely clarified that the Confrontation Clause analysis of *Crawford v. Washington*, 541 U.S. 36, 53–54, 124 S. Ct. 1354, 1365 (2004), extends to results of lab tests. Evans had every opportunity to object to the admittance of the lab results and demand that the lab technician testify, just as the

---

[3]Once again, Evans did not raise this objection at the trial level and so we review for plain error. *Rodriguez*, 398 F.3d at 1298.

defendant in *Melendez-Diaz* did; however, his counsel made a seemingly strategic decision to stipulate. The district court did not err in admitting the evidence without the lab technician after Evans's stipulation.

### 3. Sufficiency of Evidence for Conspiracy Charge

Third, Evans contends that the government failed to present sufficient evidence to show a conspiracy between Evans and Willingham, the leader of the conspiracy. He argues that: (1) his transactions were for personal use quantities and thus they were not linked to the larger conspiracy; (2) he did not participate in the conspiracy goal of maximizing profits; (3) there was not a meeting of minds or shared goals with respect to the ongoing drug-related business; and (4) Willingham contradicted himself in his testimony and made no statement indicating a continuous ongoing business arrangement with Evans.

We review a challenge to the sufficiency of the evidence *de novo*. *United States v. Suba*, 132 F.3d 662, 671 (11th Cir. 1998) (citation omitted). "The relevant question . . . is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quotation omitted). "We resolve all reasonable inferences and credibility evaluations in favor of the jury's verdict; we will uphold the jury's verdict if a reasonable fact

finder could conclude that the evidence establishes the defendants' guilt beyond a reasonable doubt." *Id.* (citation omitted). The credibility of witnesses is the exclusive province of the jury. *United States v. Chastain*, 198 F.3d 1338, 1351 (11th Cir. 1999).

"To sustain a conviction for conspiracy to possess cocaine with intent to distribute, the government must prove beyond a reasonable doubt (1) that a conspiracy existed; (2) that the defendant knew of it; and (3) that the defendant, with knowledge, voluntarily joined it." *United States v. Molina*, 443 F.3d 824, 828 (11th Cir. 2006) (quotation omitted). "[P]articipation in a criminal conspiracy need not be proved by direct evidence; a common purpose or plan may be inferred from a development and collocation of circumstances." *Suba*, 132 F.3d at 672 (quotation omitted). "The Government need only produce sufficient evidence that the defendants conspired to commit a single object." *Id.* "Because secrecy is an essential element of conspiracy, such an agreement may be proved by circumstantial as well as direct evidence." *United States v. Hernandez*, 921 F.2d 1569, 1575 (11th Cir. 1991) (quotation omitted).

"In the case of a purchaser of narcotics, . . . agreement may be inferred when the evidence shows a continuing relationship that results in the repeated transfer of illegal drugs to the purchaser." *United States v. Mercer*, 165 F.3d 1331, 1335

(11th Cir. 1999). The evidence showed that Evans regularly purchased large amounts of cocaine and marijuana from Willingham, amounts too large to be merely for personal use. *See United States v. Dekle*, 165 F.3d 826, 829–30 (11th Cir. 1999). Further, Evans sold Willingham high quality marijuana that Willingham sold to other clients. Moreover, Evans offered to sell Willingham large amounts of cocaine when Willingham's supply of cocaine encountered problems.

Viewed in the light most favorable to the verdict, there was sufficient evidence for a jury to find that Evans conspired with Willingham to distribute drugs.

### 4. *Career Offender Enhancement*

Fourth, Evans argues that the district court committed clear error by applying the career-offender enhancement.[4] Evans concedes that he had one predicate conviction for distribution of a controlled substance offense. He claims, however, that the second predicate offense, an Alabama state conviction for possession of marijuana in the first degree, did not qualify as a "controlled substance" offense under U.S.S.G. § 4B1.2(b).

---

[4]A defendant is a career offender if: (1) he is at least 18 years old at the time of the commission of the offense of conviction; (2) the offense of conviction is a felony crime of violence or controlled substance offense; and (3) there are at least two prior felony convictions for a crime of violence or controlled substance offense. U.S.S.G. § 4B1.1(a).

Evans failed to object at sentencing to the career offender status; thus, we review for plain error. *Rodriguez*, 398 F.3d at 1298. Failure to object to the facts in the PSI is deemed an admission to those facts. *United States v. Bennett*, 472 F.3d 825, 833–34 (11th Cir. 2006).

A "controlled substance offense" is defined as an offense punishable by a year or more of imprisonment, "that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b). When determining if a crime is a "controlled substance offense," a court should "look at the elements of the convicted offense, not the conduct underlying the conviction." *United States v. Lipsey*, 40 F.3d 1200, 1201 (11th Cir. 1994) (per curiam).

Under Alabama law, a person commits a crime of unlawful possession of marijuana in the first degree if "[h]e possesses marijuana for other than personal use; or . . . [h]e possesses marijuana for his personal use only after having been previously convicted of unlawful possession of marijuana in the second degree or unlawful possession of marijuana for his personal use only." Ala. Code § 13A-12-213(a). Because Evans did not qualify for the "personal use" second prong of the statute, he must have pleaded to the first prong of the statute that

12

covers possession "for other than personal use." We have held that, when convicted under the "for other than personal use" prong, the statute punishes possession of marijuana with intent to distribute. *See United States v. Robinson*, 583 F.3d 1292, 1296 (11th Cir. 2009) (discussing whether § 13A-12-213 is a serious drug offense under the Armed Career Criminal Act). Therefore, Evans's prior Alabama conviction for first degree marijuana possession qualifies as a predicate offense for the purpose of the career offender enhancement. We find no error in the district court including this enhancement in Evans's sentence.

5. *Possession of Firearm Enhancement*

Fifth, Evans argues that the district court clearly erred by enhancing his offense level under U.S.S.G. § 2D1.1(b)(1) for possession of a firearm because he was acquitted of the charged 18 U.S.C. § 924(c) offense, and he should not be punished for conduct the jury did not find illegal. Evans also argues that the enhancement violated his Second Amendment right to possess a firearm, as set forth in *District of Columbia v. Heller*, 554 U.S. ___, 128 S. Ct. 2783 (2008).

We review the district court's interpretation of the Sentencing Guidelines *de novo* and its factual findings for clear error. *United States v. Jordi*, 418 F.3d 1212, 1214 (11th Cir. 2005) (citation omitted). "Possession of a firearm for sentencing purposes is a factual finding." *United States v. Geffrard*, 87 F.3d 448, 452 (11th

Cir. 1996) (citation omitted). According to "long-standing precedent, [r]elevant conduct of which a defendant was acquitted nonetheless may be taken into account in sentencing for the offense of conviction, as long as the government proves the acquitted conduct relied upon by a preponderance of the evidence." *United States v. Faust*, 456 F.3d 1342, 1347 (11th Cir. 2006) (alteration in original) (quotation omitted).

According to U.S.S.G. § 2D1.1(b)(1), a court should increase the offense level by two "[i]f a dangerous weapon (including a firearm) was possessed." The enhancement "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." *Id.* cmt. n.3. The government has the burden "to demonstrate the proximity of the firearm to the site of the charged offense by a preponderance of the evidence." *United States v. Audain*, 254 F.3d 1286, 1289 (11th Cir. 2001) (per curiam) (citation omitted). "If the government is successful, the evidentiary burden shifts to the defendant to demonstrate that a connection between the weapon and the offense was 'clearly improbable.'" *Id.* (citation omitted).

A pistol was found at Evans's restaurant, laying on top of a safe containing $27,000 in tightly wrapped bundles of cash. A government witness testified that the possession of firearms and other weapons is common among individuals

14

involved in the drug trade because of the danger presented by law enforcement and thieves. In other words, the pistol found in Evans's restaurant could reasonably be determined to be an instrumentality used to protect the large amounts of money generated by Evans's drug trade.

As for Evans's Second Amendment argument, "the right secured by the Second Amendment is not unlimited." *Heller*, 128 S. Ct. at 2816. *Heller* specifically stated that the opinion was not meant to cast doubt on longstanding restrictions on the possession of firearms, such as prohibiting possession by felons. *Id.* at 2816–17. There is no support in *Heller* for the invalidation of the firearm enhancement on the basis of the Second Amendment.

The district court did not clearly err by finding that Evans possessed a firearm in connection with the drug offense. The district court could apply the enhancement even though the jury acquitted Evans of the § 924(c) firearm charge because the government proved by a preponderance of the evidence that the firearm was connected with the offense. Additionally, application of the enhancement did not violate Evans's Second Amendment right to bear arms.

6. *Unreasonable Substantive Sentence*

Sixth, Evans argues that the life sentence imposed by the court was unreasonable because it was longer than necessary to achieve any of the stated

15

aims of 18 U.S.C. § 3553(a). He asserts that he is confined to a wheelchair and is the caretaker for two minor children following the murder of their mother. He argues that the district court failed to set out its reasoning for sentencing him to life imprisonment or what consideration the judge gave the § 3553(a) factors.

We review the "substantive reasonableness of the sentence by applying a deferential abuse of discretion standard of review." *Chavez*, 584 F.3d at 1365 (citation omitted). Where the district court imposes a within-guidelines sentence, it need only "set forth enough to satisfy the appellate court that [its] has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356, 127 S. Ct. 2456, 2468 (2007). The challenger "bears the burden of establishing that the sentence is unreasonable in the light of both [the] record and the factors in section 3553(a)." *United States v. Talley*, 431 F.3d 784, 788 (11th Cir. 2005) (per curiam). "The review for substantive unreasonableness involves examining the totality of the circumstances, including an inquiry into whether the statutory factors in § 3553(a) support the sentence in question." *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008) (per curiam) (citation omitted), *cert. denied*, 129 S. Ct. 2848 (2009).[5]

---

[5]The § 3553(a) factors a court must consider in determining a sentence include: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2)

16

The guideline range for an offense level of 37 and a criminal history category of VI is 360 months to life imprisonment. U.S.S.G. Ch. 5, Pt. A (table). Conspiracy to commit an offense carries the same penalty as prescribed for the substantive offense. 21 U.S.C. § 846. The statutory maximum sentence for a person previously convicted of a felony drug offense who possesses between 500 grams and less than 5 kilograms of cocaine is life imprisonment. *Id.* § 841(b)(1)(B)(ii).

At sentencing the district judge listened to Evans and his attorney and recognized the mitigating factors, including Evans's poor health. The judge stated that he imposed a life sentence "[t]o provide just punishment for the defendant . . . and to provide adequate deterrence." The judge went on to note Evans's characteristics and history, specifically the fact that Evans has been involved in drugs from an early age and that nothing ever made him quit his illegal activity. We find that Evans's sentence was supported by the § 3553(a) factors; therefore, the district court did not abuse its discretion by sentencing Evans to life imprisonment.

---

the need for the sentence (A) "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," (B) "to afford adequate deterrence to criminal conduct," (C) "to protect the public from further crimes of the defendant," and (D) "to provide the defendant with needed educational or vocational training or medical care;" (3) "the kinds of sentences available;" (4) the Sentencing Guidelines range; (5) pertinent policy statements of the Sentencing Commission; (6) "the need to avoid unwarranted sentencing disparities;" (7) and the need to provide restitution to victims. *See* 18 U.S.C. § 3553(a)(1)–(7).

*B.*      *Goodlow's Motion to Supress*

Goodlow argues that the district court erred when it denied her motion to suppress evidence found in her trailer because the government failed to demonstrate probable cause to search her trailer.[6] She asserts a lack of probable cause because: (1) the search warrant affidavit did not state a connection between Willingham's drug activities and her trailer; (2) the affidavit did not contain specific enough information concerning her involvement; (3) the warrant did not include her trailer because it was issued for 5136 County Road, and her trailer is properly at 5138 County Road; and (4) the affidavit failed to articulate with specificity what the government expected to find in the trailer.

We review a district court's denial of a motion to suppress under a mixed standard of review, examining findings of fact for clear error and the application of law to those facts *de novo*. *United States v. King*, 509 F.3d 1338, 1341 (11th Cir. 2007) (per curiam). As noted above, however, where the defendant has failed to raise an issue below, we review for plain error. *Rodriguez*, 398 F.3d at 1298.

---

[6] Goodlow also argues that the *United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405 (1984), good-faith exception to the exclusionary rule cannot apply to allow admission of the seized evidence because the error in identification of the address and the lack of particularity in the affidavit were made by the affiant, not the magistrate who issued the warrant. In light of our determination that the search warrant was valid, we do not address this argument.

18

"A warrant which fails to sufficiently particularize the place to be searched or the things to be seized is unconstitutionally over broad." *United States v. Travers*, 233 F.3d 1327, 1329 (11th Cir. 2000) (citation omitted). However, "[w]hen evaluating a warrant, it is enough if the description is such that the officer with a search warrant can, with reasonable effort, ascertain and identify the place intended." *United States v. Ellis*, 971 F.2d 701, 703 (11th Cir. 1992) (alteration omitted) (quotation omitted). "More specifically, a warrant's description of the place to be searched is not required to meet technical requirements or have the specificity sought by conveyancers. The warrant need only describe the place to be searched with sufficient particularity to direct the searcher, to confine his examination to the place described, and to advise those being searched of his authority." *Id.* (alteration omitted) (quotation omitted).

"Probable cause to search a residence exists when "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Jenkins*, 901 F.2d 1075, 1080 (11th Cir. 1990) (quotation omitted). "Where a warrant to search a residence is sought, the affidavit must supply the authorizing magistrate with a reasonable basis for concluding that Defendant might keep evidence of his crimes at his home, i.e., a 'safe yet accessible place.'" *United*

19

*States v. Kapordelis*, 569 F.3d 1291, 1310 (11th Cir. 2009) (citation omitted), *cert. denied*, 130 S. Ct. 1315 (2010).

The district court did not err by denying the suppression motion because the search warrant identified Goodlow's home with sufficient particularity. The warrant incorporated by reference the affidavit and other attachments, which explicitly stated that the area to be searched included the mobile home, and that the mobile home sometimes used the 5138 address. Additionally, the district court did not plainly err by denying her motion to suppress for lack of probable cause because, based on information in the affidavit, there existed fair probability that contraband would be found in the mobile home.

Upon a thorough review of the entire record on appeal, and after consideration of the parties' appellate briefs, we affirm Evans's and Goodlow's convictions, and Evans's sentence.

**AFFIRMED.**