JACOBS, Circuit Judge:
Defendant Branden Huertas appeals the denial of his motion to suppress a firearm that, he contends, was found as a result of an illegal seizure. After the United States District Court for the District of Connecticut (Arterton, J.) denied his motion to suppress, Huertas conditionally pleaded guilty to being a felon in possession of a weapon. He contends he was seized when a police officer in a squad car, who had been alerted to a man lurking with a gun, shined a spotlight on Huertas and asked questions to which Huertas responded. We conclude that because Huertas never submitted to police authority, he was never seized. We therefore affirm.
I
In May 2014, a woman pulled her car alongside a police cruiser in Bridgeport, Connecticut to ask about the process for amending a police report.[1] After Officer Thomas Lattanzio responded, the woman drove away for a few feet, then reversed toward the police car and told Officer Lat-tanzio that a man named Branden was nearby with a gun. She pointed down the street, but Officer Lattanzio did not see anyone. Without giving her name, the woman drove away.
Officer Lattanzio then drove in the direction the woman pointed, searching for an armed man. He soon saw Huertas standing on a street corner holding a black bag. Officer Lattanzio drove toward Huer-tas, going the wrong way on the one-way street. As the cruiser approached, Officer Lattanzio turned on the cruiser’s spotlight and illuminated Huertas. Through the car’s window, Officer Lattanzio asked Huertas a few questions, such as ‘What’s going on?” and “What happened with the girl?” During Officer Lattanzio’s approach and questioning, Huertas stayed in a fixed position and began answering the questions. The encounter lasted between thirty seconds and one minute. As soon as Officer Lattanzio got out of the cruiser, Huertas ran away.
Other police officers later found and arrested Huertas. A search of Huertas’s route turned up a bag similar to the one Huertas had been holding. The bag contained a firearm.
II
The only question on appeal is whether Huertas was seized. Whether a seizure would have been in violation of the *216 Fourth Amendment is an issue not reached by the district court, and is not before us. Because Huertas is appealing a suppression ruling, “we review factual findings for clear error and we review questions of law de novo.” United States v. Faux, 828 F.3d 130, 134 (2d Cir. 2016).
“A seizure ... requires ‘either physical force ... or, where that is absent, submission to the assertion of [police] authority.”’ United States v. Swindle, 407 F.3d 562, 572 (2d Cir. 2005) (emphasis in original) (quoting California v. Hodari D., 499 U.S. 621, 626, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991)). It is undisputed that Officer Lattanzio used no physical force; Therefore, Huertas was seized only if he (1) “submitted” (2) to an “assertion of authority.” We conclude that Huertas never “submitted” to Officer Lattanzio and was therefore never “seized” within the meaning of the Fourth Amendment. In light of this disposition, we need riot consider whether the spotlighting of Huertas by a police car going the wrong way down a dark street constituted an “assertion of authority.”
“Whether conduct constitutes submission to police authority will depénd ... on ‘the totality of the circumstances—the whole picture.’ ” Uriited States v. Baldwin, 496 F.3d 216, 219 (2d Cir. 2007) (quoting United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)). Of particular relevance here, conduct that “amount[s] to evasion of police authority” is “not submission.” Id. at 219.
III
Huertas argues that he “submitted” to police authority by standing still as Officer Lattaiizio’s police cruiser approached and by answering Officer Lattan-zio’s questions,[2] However, we conclude that Huertas’s behavior was. akin to the evasive actions in Baldwin, which did not constitute submission. The defendant in Baldwin pulled his car to the side of the road in response to a police cruiser’s siren and flashing lights. 496 F.3d at 217. Both police officers walked toward Baldwin’s car and ordered Baldwin to show his hands. Id. When he refused and just stared at them, the officers drew their weapons and continued to approach. Id. As they neared, Baldwin sped off. Id. When Baldwin was apprehended, weapons and drug paraphernalia were found in his car. Id.
The trial court denied Baldwin’s motion to suppress the physical evidence on the ground that it was1 discovered after an illegal seizure. Id. at 217-18. We affirmed on the ground that the temporary stop did not constitute submission to police' authority. Id. at 218-19. Rather, “Baldwin’s conduct, all circumstances considered, amounted to evasion of police authority, not submission.” Id. at 219 (emphasis added).
All circumstances considered, Huertas’s actions were likewise evasive, and maximized his chance of avoiding arrest. If Huer-tas had run as soon as he was illuminated by Officer Lattanzio’s spotlight, he could expect Officer Lattanzio to give chase. By *217 remaining still and answering questions, Huertas had a chance to quiet suspicion and hope that Officer Lattanzio would drive away after being satisfied with answers to' his questions. But as soon as Huertas saw Officer Lattanzio getting out of his car, Huertas-ran. Among the significant circumstances are the brevity of the interaction and the fact that Officer Lat-tanzio was never within reach of Huertas and able to physically restrain him. As in Baldwin, the totality of the circumstances indicate that the defendant was evading police authority, not submitting to it. Huertas was never seized, and the evidence was admissible.
Huertas fails to distinguish Baldwin. First, Huertas argues that Baldwin “gained an advantage by tricking the chasing officers into stopping,” whereas Huer-tas gained no advantage from his actions. Appellant’s Opening Br. at 19. This is incorrect. By answering Officer Lattanzio’s questions and standing still, Huertas could allay Officer Lattanzio’s suspicion, and induce him to drive away. Second, Huertas argues that Baldwin “lacked the direct interaction that occurred in this case.”. M. But Huertas does not explain how the allegedly more “direct” interaction in this case makes his conduct any less evasive.
IV
Huertas relies in part on Brendlin v. California, 551 U.S. 249, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007), which considered whether a passenger in a vehicle may be “submitting]” to police authority when the driver pulls the car to the side of the road in response to flashing police lights:
[W]hat may amount to submission depends on what a person was doing before the show of authority: a fleeing man is not seized until he is physically overpowered, but one sitting in a chair may submit to authority by not getting up to run crnay.... [The defendant] had no effective way to signal submission while the car was still moving on the roadway, but once it came to a stop he could, and apparently did, submit by staying inside.
551 U.S. at 262, 127 S.Ct. 2400 (italics added). Huertas argues by analogy that he passively remained in place after a show of authority while the police car approached him. However, the italicized language suggests that what mattered is that Brendlin let pass his opportunity to flee. That is the opposite of what Huertas did: he fled as soon as Officer Lattanzio opened his door and signaled that he was not going away.
Huertas also relies on two out-of-circuit cases. In United States v. Brodie, the defendant initially complied with an order to place his hands on a police cruiser, but then ran when he noticed that the police officer was distracted. 742 F.3d 1058, 1061 (D.C. Cir. 2014). The D.C. Circuit held that Brodie had submitted to police authority, observing that nothing “in the record suggest[s] that Brodie had some ulterior purpose in putting his hands on the car, such as a belief that doing so would facilitate escape.” Id. And indeed, he complied with an order that considerably impaired his chance of evasion. Not so for Huertas.
Huertas also cites United States v. Camacho, 661 F.3d 718 (1st Cir. 2011), in which the police drove their cruiser in front of two men, got out, and immediately began to ask questions. Id at 722, The First Circuit held that the defendant had “submitted” as soon as he responded to the police officer’s questions, “at which point his liberty had been restrained and he was seized under the Fourth Amendment.” Id. at 726 (alterations and quotation marks omitted). We doubt that responding to a policeman’s questions, without more, amounts to submission for purposes of the Fourth Amendment at least one other *218 Court of Appeals shares our skepticism. See United States v. Valentine, 232 F.3d 350, 359 (3d Cir. 2000) (“Even if Valentine paused for a few moments and gave his name, he did not submit in any realistic sense.... ”). In any event, we are not bound by the First Circuit’s holding, and we conclude that our own precedent of Baldwin controls this case.[3]
V
The dissent argues that the majority widens or transcends the principle of Baldwin. However, Baldwin did not establish a bright-line test for what constitutes seizure. Baldwin, like every other case concerning Fourth Amendment seizures, looked at all the factual circumstances to determine whether there was “submission” to the police before concluding that the defendant was trying to evade rather than submit. Baldwin, 496 F.3d at 219. So too here.
The dissent discards reliance on the totality of circumstances, and proposes a per se rule: when, in response to a question by a police officer, a suspect does “nearly anything” more than a brief pause, the suspect has “submitted” to police authority within the meaning of the Fourth Amendment. Dissent at 220. Under the dissent’s approach, a suspect would be deemed to have submitted to police authority by answering a police officer’s questions from the other side of a high fence, even if the suspect ran as soon as the cop moved to scale it.
As it happens, this case is a close analogue to Baldwin. In Baldwin, the defendant was pulled over by a police cruiser, and took off when both officers in the cruiser got out and were approaching on foot. 496 F.3d at 217. In this case, the defendant stayed put until he saw the sole officer in the cruiser start to open the door. The dissent seems to think that the Baldwin precedent depends on a plan or design to flee that is formed before the defendant feints at submission. But suspects often act on opportunity and impulse rather than calculation. In any event, Baldwin could not have known that both officers would get out of the cruiser to approach, and thereby offer the opportunity to step on the gas without immediate pursuit.
This case is factually close to Baldwin, and the principle of Baldwin is not fact-limited. Subject to the specific circumstances of each case, submission is questionable when a suspect remains out of reach and takes flight when police move to lay hands on him.
CONCLUSION
For the foregoing reasons, we affirm the judgment of the district court.

. The following facts are drawn from Officer Lattanzio’s testimony at the suppression hearing. Huertas submitted an affidavit giving his description of his interaction with Officer Lat-tanzio, but both parties agree that the district court’s order denying the suppression motion was based on Officer Lattanzio’s testimony. Although Huertas alleges that there are "discrepancies” between Officer Lattanzio’s testimony,- his earlier police report, and Huertas's affidavit, Huertas does not contend that any of the facts relied upon by the district court were clearly erroneous, which is the relevant standard of review. United States v. Faux, 828 F.3d 130, 134 (2d Cir. 2016).

. The dissent states that the district court, having accepted Huertas’s version of events, assumed that Huertas stopped walking after Officer Lattanzio approached, in order to answer the police officer's questions. See United States v. Huertas, No, 3:14cr141(JBA), 2015 WL 1517403, at *2 (D. Conn. Apr. 1, 2015). True, the district court stated that its decision would be unchanged “even if” Huertas had initially been walking. Id, But Huertas concedes that the district court credited Officer Lattanzio’s testimony, .which was clear that Huertas was standing throughout the encounter. Even Huertas’s brief concedes that he "remain[ed] in a ffixed’ position.” Appellant’s Opening Br. at 17. Consequently, we need not join issue with the dissent on this point.

. After oral argument in this case, the Tenth Circuit decided United States v. Hernandez, 847 F.3d 1257 (10th Cir. 2017), a case that Huertas contends supports his position that he was "seized” when he stayed put to answer Officer Lattanzio's questions. The Tenth Circuit ruled that Hernandez had been seized when he stopped walking and answered questions posed by police. Id. at 1264-65. But the Tenth Circuit considered many factors, including the fact that Hernandez complied with an officer’s explicit request that he stop walking and talk to him. Id. at 1261, 1264-65. Hernandez is easily distinguishable, not least because Hernandez stopped walking only after he was told to stop walking by police that had been following him in an intimidating manner. The dissent also cites an earlier Tenth Circuit decision (not cited in Huertas’s brief) that found that a defendant had been "seized” in circumstances similar to Hernandez. See United States v. Morgan, 936 F.2d 1561 (10th Cir. 1991). Our circuit has explicitly rejected the reasoning in Morgan. See Baldwin, 496 F.3d at 218-19.